JOHN H. LINCK, APPELLANT, *v.* SALT LAKE CITY
AND OTHERS, RESPONDENTS.

PUBLIC LANDS.— TOWN SITE LAW.—UNOCCUPIED LAND.—Mayor of
Salt Lake City made entry under the "Town Site Law," § §
2387, 2388, Revised Statutes U. S., 14 Stat. 541 of certain land,
and patent was issued therefor, vesting the legal title in the
mayor and his successors. A statute of Utah, approved Feby.
17, 1869, § 10, (Session Laws, 1869, p. 6,) provided that, if there
should remain any unclaimed lands within the limits of a city or
town, after the expiration of six months from the publication of
the notice the corporate authorities shall cause the same to be
surveyed and laid out into suitable blocks and lots, and should
reserve such portions as might be deemed necessary and the
mayor may sell lands not reserved, and if any lands should re-
main unsold at the expiration of three months the corporate
authorities might sell as they deem best. A complaint alleged
the patent, that certain lands remained unclaimed, that the sales
of unclaimed lands had been fraudulent, or gross favoritism
had been shown therein, that the plaintiff entered upon certain
vacant land of said town site never before claimed or occupied
by any one or for any purpose, but had been forcibly ejected
therefrom and his improvements destroyed; *held* upon applica-
tion for injunction that "the allegations of the complaint were
quite too broad to be met by a general demurrer."

APPEAL from a judgment of the district court of the
third district sustaining a demurrer to the complaint. The
opinion states the facts.

*Mr. Arthur Brown*, for the appellant.

*Messrs. Sheeks and Rawlins*, for the respondent.

When the entry of the land was made, the price paid to
and received by the government, the contract between the
government and those interested in the purchase was com-
plete and the rights of parties fixed at that date. Such is
the general law of contracts, and such also is the law in
cases of this kind. *Cofield* v. *McLeland*, 16 Wall., 331;
*Ashby* v. *Hall*, 119 U. S., 526; *Stringfellow* v. *Cain*, 99 U.
S., 610; *Denver* v. *Kent*, 1 Colo., 337. A suit in equity or
an injunction can not be made to serve the purpose of an
action in ejectment. *Lewis* v. *Cocks*, 23 Wall., 466.

Judd, J.:

The complaint in this case alleges that about the year 1871 the then mayor of Salt Lake City, Territory of Utah, made an entry in the United States land office at said city, under the act of the congress of the United States known as the "Town Site Act," of a large tract of land, including in said entry the land hereafter mentioned; that the patent of the United States was issued to the mayor in the usual form in such case in June, 1872, and thereby the mayor of said city and his successors in office became and were invested with the legal title to the lands, but in trust only for those who were then or who should thereafter become occupants and beneficiaries under the act of congress; that in the execution of the trust a large quantity of the land, and the lots so patented, were found to be unclaimed by any person occupying the same at the date of said entry, and much of the same still remained unoccupied and unclaimed at the time of filing of the bill in this cause. The complaint then proceeds to allege, upon information and belief, that the defendant Salt Lake City, through its officers and agents, claimed that such vacant lands and unoccupied lots are the private property of the city; and, further, that it has been the custom of the city, by its officers and agents, during the years since the date of the said patent and the conveyance made to occupants claiming at that time to arbitrarily sell lots and parcels of said lands to whomsoever it pleased, without regard to occupancy or right or price; that portions of said unoccupied lands have been sold to friends of members of the city council and others, whomsoever the officers of said city desired to favor or assist, and refusing to sell to others on like terms, and no uniform rule or ordinance has been established or is in existence for the sale of said lands or lots; that the land hereinafter described has never been occupied or appropriated by any one, nor has it ever been deeded or conveyed by said Salt Lake City, or any mayor of said city, to any person whomsoever, and was entirely vacant until this plaintiff, on the eleventh day of February, 1888, entered upon and took actual and peaceful possession thereof; that no part of the same has been platted by the

city, or surveyed into streets, blocks or lots, or appropriated to any public use, either by the city or anyone else, nor has it ever been filed upon in any manner by said city, nor had it ever asserted any proprietorship or control over the same, except as the above stated. The bill further charges that on the day last aforesaid the plaintiff, a citizen of the United States and of Salt Lake City, went upon said land for the purpose of appropriating the same, and occupying it as beneficiary of said town-site law, as he might of right do, and with the intention of making valuable improvements thereon; that he caused a survey to be made thereof, and accurately, by posts driven in the ground, marked the boundaries or limits of the same upon the ground, the following being the description thereof: The bill then proceeds to set out the boundaries of the lot or lots to which complainant claims title by the right of occupancy, and then charges that, after taking actual possession of the premises and completing the survey, on February 13, 1888, the plaintiff caused a full and complete description of said premises to be filed for record in the office of the recorder of Salt Lake county, together with a written statement and notice of his claim thereto as an occupant thereof, as the owner of the said lands; that the complainant began to make improvements, erecting fences and inclosing parcels in good and substantial inclosures; and that on the sixteenth of February plaintiff had at work on said parcels of land a large force of men, engaged in improving the said property, and was intending to build houses thereon, and make a place of residence of the same, and the materials therefor were contracted for and were ready to be transported to the land, when the defendants, Francis Armstrong, the mayor of Salt Lake City, Alfred Salomon, the city marshal, and a large force, claiming to be of the police of said city, and to be acting under the direction of the city council, armed with rifles and other deadly weapons, entered upon the possession and occupancy of the plaintiff, and, with threats to use the guns upon the plaintiff if he resisted, assaulted the employes and interrupted the work and improvements of the plaintiff, and threw a temporary shelter, erected for the men

employed, off the premises, and demolished complainant's inclosure, and threatened to shoot any one who should resist their violent and unlawful acts. These are all the allegations of the complainant's bill that we deem it necessary to notice at this time, further than to say that an injunction was prayed for and that there is a prayer for general relief appended to the bill, together with prayer for special relief. To this bill a demurrer was filed, whose substance is that the bill does not state facts sufficient to constitute a cause of action. This demurrer was sustained by the Court below, and the bill dismissed. Upon what ground the trial judge acted in dismissing this bill we are not informed, as there is nothing in the judgment to indicate the reasons therefor.

The act of Congress providing for the entry by towns of the public lands of the United States, commonly called the "Town-Site Act," is found at section 2387 of the Revised Statutes of the United States, and is as follows: "Whenever any portion of the public lands have been or may be settled upon and occupied as a town-site * * * it is lawful, in case such town be incorporated, for the corporate authorities thereof * * * to enter at the proper land office, and at the minimum price, the land so settled and occupied, in trust for the several use and benefit of the occupants thereof, according to their respective interests, the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated." The town-site of Salt Lake City, including the land in controversy, was entered under this act. The Territory of Utah, in 1869, passed an act containing 12 sections, which purports to be an act in pursuance of the authority conferred in the act of Congress above quoted, and for the purpose of executing the trust therein delegated by the United States. The first nine sections relate to the manner in which occupants who were such at the time of the entry of the mayor shall obtain their titles for the respective lots occupied by them, and the tenth section provides as follows: "If there shall re-

main any unclaimed lands within the limits of such city
or town, after the expiration of six months from the pub-
lication of the notice provided in section three, the cor-
porate authorities, in cases where the lands shall have been
entered by them, and the judge of probate, in cases where
the lands shall have been entered by him, shall cause the
same to be surveyed and laid out into suitable lots and
blocks, and shall reserve such portions as may be deemed
necessary for public squares, school houses or hospital lots,
and shall cause all necessary streets, roads, lanes and alleys
to be laid out through the same, a plot of which, properly
certified, shall be recorded in the recorder's office of the
county in which the same may be situated; and the mayor
of such city or town, or judge as aforesaid, may sell the
lots or blocks so laid out, and not reserved for public use,
in suitable parcels, to possessor of adjoining lands, or to
other citizens of such city or town, at a price not less than
five dollars per acre, or fraction of an acre, and, in case
two or more persons apply for the same tract, they shall
sell the same by auction to the highest bidder, and, if any
such lands remain unsold at the end of three months from
the date of filing the plat thereof for record, as required
herein, the corporate authorities, or judge as aforesaid,
shall have power and authority to sell such vacant lands at
public or private sale, in such manner and on such terms
as they may deem advisable for the best interests of the
city or town, and shall give deeds therefor to the several
purchasers." It would seem from the reading of this stat-
ute that there could be no question but that in all essen-
tials it was a fair attempt upon the part of the legislature
to see that this trust which devolved upon the corporate
authorities of Salt Lake City should be fully and fairly
executed. The case, as we find it by this record, shows
that, after the occupants who were such at the date of the
entry had received their titles, there remained undisposed
of large quantities of land held by the city, and under and
subject to the trust imposed upon it by the act of congress
in the manner prescribed by the legislature as to this un-
occupied public land, but that when the plaintiff went upon
it he was, by means such as are not allowable in a land of

8

law and order, forcibly ejected therefrom, and his property in a most wanton and outrageous manner destroyed; that the defendant, through its city council, reserves to itself the right to sell lots to its friends, and such as it may choose to favor, but positively declines to lay out, as the act of the legislature requires, this public land into lots, and make any sale thereof to the public or otherwise, except such as may suit their purpose; and, further, the bill charges that the city claims such public lands as its own private property, to be disposed of to such persons and in such manner as it may deem proper to do.

It is true that the statements and allegations of the bill filed in the cause are barely sufficient to compel upon the part of the city an execution of this trust, and yet its statements and allegations are quite too broad to be met by a general demurrer. We think that this complainant, being a citizen of the United States of America and of Salt Lake City, and being an occupant, as he alleges himself to be, of the public lands included in the grant to the mayor, has the right to have the right imposed by the act of congress executed in his favor, and we think that the allegations of this bill make a case which a court of equity cannot disregard. We do not undertake to say at this time what are the exact rights of this complainant, nor do we undertake to say to what amount of land he may be entitled as an occupant, nor the exact extent of his interest as an occupant or beneficiary in the lands described; but what we do decide is that the demurrer in this cause does not meet the allegations of the bill, and we think the bill, as it now stands, does contain sufficient facts to move the conscience of a court of equity. We are therefore of the opinion that the decree of the court below sustaining the demurrer and dismissing the bill was erroneous, and must be reversed, and this cause is remanded to the court below, with leave to the complainant to make such amendments as he may be advised are proper, and a like leave to the defendants to file such answer as they may be advised their rights under the law authorize.

BOREMAN, J., and SANDFORD, C. J., concurred.